UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NARCILO CAICEDO HINESTROZA, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>POLLY KAISER, et al.,<br><br>  Defendants. | Case No. 25-cv-07559-JD<br><br>**ORDER RE EX PARTE APPLICATION FOR TRO** |

Petitioners Narcilo Caicedo Hinestroza, Jairo Andres Dangond Lopez, and Jhelvin Jherh Ramos Huaman, who are citizens of Colombia (Hinestroza and Lopez), and Peru (Huaman), are currently in civil immigration detention in San Francisco, California. They filed a petition for a writ of habeas corpus, and an application for a temporary restraining order, for release from detention pending a hearing on whether detention is warranted by concerns of flight risk or danger to the community. *See* Dkt. No. 1 (petition); Dkt. Nos. 2, 3 (TRO). Respondents are Polly Kaiser, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement (ICE) Office; Todd Lyons, Acting Director of ICE; Kristi Noem, Secretary of the U.S. Department of Homeland Security (DHS); and Pam Bondi, U.S. Attorney General, all named in their official capacities.

Each petitioner alleges that he was apprehended at the border and subsequently released because he was not a flight risk or a danger to the community. Dkt. No. 1 at ¶¶ 51, 53, 56. Each petitioner alleges that he has complied with all ICE and immigration court obligations since release. *Id.* On September 5, 2025, petitioners appeared for master calendar hearings before an Immigration Judge (IJ). *Id.* at ¶¶ 52, 54, 57. The government moved to dismiss petitioners' cases during the hearings, which the IJ denied. *Id*. ICE agents arrested petitioners as they left the

hearings. *Id.* at ¶¶ 1, 55, 58. They were placed in custody without an adjudicative proceeding. *Id.*

The TRO application was styled as an ex parte request, but the government had notice and filed an opposition. Dkt. No. 5. Consequently, "the same legal standard as a motion for a preliminary injunction applies." *Fang v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 16-CV-06071-JD, 2016 WL 9275454, at *1 (N.D. Cal. Nov. 10, 2016), *aff'd*, 694 F. App'x 561 (9th Cir. 2017). Under these familiar standards, a preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The irreparable harm must be "*likely* in the absence of an injunction" and not merely possible, no matter how strong the likelihood that plaintiffs will prevail on the merits. *Id.* at 21-22 (emphasis in original).

In our circuit, it is well established that a preliminary injunction may also be issued where "the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor.' " *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citation omitted). Our circuit held after careful consideration that "the 'serious questions' approach survives *Winter* when applied as part of the four-element *Winter* test." *Id.* at 1131-32, 129 S.Ct. 365; *see also id.* at 1134 (affirming "the longstanding discretion of a district judge to preserve the *status quo* with provisional relief until the merits could be sorted out in cases where clear irreparable injury would otherwise result and at least 'serious questions' going to the merits are raised'") (quoting *Save Strawberry Canyon v. Dep't of Energy*, No. C 08-03494 WHA, 2009 WL 1098888, at *1-3 (N.D. Cal. Apr. 22, 2009)). Our circuit has continued to apply this test. *See, e.g., hiQ Labs, Inc. v. LinkedIn Corporation*, 31 F.4th 1180, 1191 (9th Cir. 2022) (finding that "hiQ has raised 'serious questions going to the merits'" and affirming the district court's grant of a preliminary injunction); *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1177 (9th Cir. 2021) ("[T]he sliding scale test 'remains viable after the Supreme Court's decision in *Winter*.'") (quoting *Alliance for the Wild Rockies*, 632 F.3d at 1131-35).

1      This case is part of a tsunami of similar cases in this District based on the government's
2  theory that petitioners are "applicants for admission" to the United States who are "subject to
3  mandatory detention under 8 U.S.C. § 1225(b)." Dkt. No. 5 at 1. The theory has been uniformly
4  rejected by the courts of the District. *See, e.g., Jimenez Garcia v. Kaiser et al.*, 25-cv-06916-YGR
5  (N.D. Cal. Aug. 29, 2025); *Calderon v. Kaiser*, No. 5:25-cv-06695, 2025 WL 2430609 (N.D. Cal.
6  Aug. 22, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal.
7  Aug. 21, 2025).

8      The Court's independent review found no grounds for a different conclusion here. The
9  Due Process Clause of the Fifth Amendment guarantees that the government may not deprive any
10 person of liberty without due process of law. *See* U.S. Const. amend. V. "Freedom from
11 imprisonment -- from government custody, detention, or other forms of physical constraint -- lies
12 at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The
13 guarantee applies in full force to "all 'persons' in the United States, including aliens, whether their
14 presence here is lawful, unlawful, temporary, or permanent," and to "an alien subject to a final
15 deportation order." *Id*. at 693. The due process required by the Fifth Amendment typically entails
16 a pre-deprivation hearing. *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("the Constitution
17 requires some kind of hearing *before* the State deprives a person of liberty or property" (emphasis
18 in original)).

19     The allegations in the petition raise a serious question with respect to whether the detention
20 of petitioners complies with the Due Process Clause and traditional notions of procedural fairness.
21 *See Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). The government did not contest the
22 materials facts. The fact that the government's legal arguments have been turned aside in many
23 similar cases is another good reason to question the propriety of the detentions.

24     For the other factors of injunctive relief, there is no question that petitioners are
25 experiencing immediate and irreparable harm from detention. *See Hernandez v. Sessions*, 872
26 F.3d 976, 995 (9th Cir. 2017) (noting "the irreparable harms imposed on anyone subject to
27 immigration detention"). In addition, the public interest in due process weighs in petitioners'
28 favor. *See Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005).

Consequently, a TRO is granted on the ensuing terms:

(1) Respondents, and their officers, agents, employees, attorneys, and any person acting in concert with them, or at their behest, and who has knowledge of this injunction, are ordered to immediately release from custody petitioners Narcilo Caicedo Hinestroza, Jairo Andres Dangond Lopez, and Jhelvin Jherh Ramos Huaman.

(2) Respondents, and their officers, agents, employees, attorneys, and any person acting in concert with them, or at their behest, and who has knowledge of this injunction, are enjoined from detaining petitioners Narcilo Caicedo Hinestroza, Jairo Andres Dangond Lopez, and Jhelvin Jherh Ramos Huaman without a pre-detention hearing before a neutral decisionmaker.

(3) Respondents, and their officers, agents, employees, attorneys, and any person acting in concert with them, or at their behest, and who has knowledge of this injunction, are enjoined from transferring petitioners Narcilo Caicedo Hinestroza, Jairo Andres Dangond Lopez, and Jhelvin Jherh Ramos Huaman out of the District without the Court's prior approval.

(4) Respondents will show cause in writing by September 15, 2025, why a preliminary injunction should not be entered. Petitioners may file a response by September 19, 2025. A hearing on the order to show cause is set for September 22, 2025, at 10:30 a.m. in Courtroom 11.

The government did not present any evidence of costs or harms from a TRO, and so petitioners need not give security under Federal Rule of Civil Procedure 65(c). *See Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999).

**IT IS SO ORDERED.**

Dated: September 9, 2025

JAMES DONATO
United States District Judge